UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARQUIS WRIGHT,

                                  Petitioner,

                -v-

UNITED STATES OF AMERICA,

                                  Respondent.

19 Civ. 3972 (PAE)

15 Cr. 445-3 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

      The Court has reviewed the *pro se* petition of Marquis Wright for relief pursuant to 28 U.S.C. § 2255 (Dkt. 1 in 19 Civ. 3972; Dkt. 1015 in 15 Cr. 445), Wright's subsequent filings (Dkt. 1017 in 15 Cr. 445), and the Government's opposition (Dkt. 8 in 19 Civ. 3972; Dkt. 1063 in 15 Cr. 445). The Court denies Wright's petition.[1]

      1.      On December 9, 2015, Wright was indicted, along with 25 others, in connection with his participation in the violent 18 Park gang, the members of which committed crimes including murder, attempted murder, robbery, and narcotics distribution in and around the Patterson Housing projects in the Bronx, New York. On August 14, 2017, after two trials of co-defendants had resulted in guilty verdicts and with his trial approaching, Wright pled guilty, pursuant to a plea agreement, to a two-count superseding information. Count One charged him with the use of a firearm, which was discharged, in connection with murder in aid of racketeering, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2. Count Two charged him with the use of firearms, which were discharged, in connection with both a racketeering conspiracy and a narcotics conspiracy, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), (ii), and (iii),

---

[1] Ensuing citations are all to the docket of Wright's criminal case.

§§ 924(c)(1)(C)(i), and 2. The first count related to Wright's role in the May 29, 2011, murder of Johnny Moore, to which Wright drove the shooter, Wali Burgos, and supplied Burgos with the gun that Burgos used to murder Moore. The second count related more broadly to Wright's role in the 18 Park gang. As Wright's pre-sentence report set out, and as the evidence at the trials of Wright's co-defendants established, Wright was (with Jonathan Rodriguez) one of the two leaders of 18 Park, and was the only non-cooperating defendant involved in both murders (those of Moore and of Brandon Howard) carried out by 18 Park as of the December 2015 indictment.

2. The offenses to which Wright pled guilty each carried a mandatory minimum sentence—a 10-year sentence on Count One and a 25-year sentence on Count Two—and these were required to run consecutive to each other. Wright's plea agreement recognized therefore that he faced a mandatory sentence of at least 35 years imprisonment. In consideration for this sentence, the Government agreed to move at sentencing to dismiss, and Wright thereby avoided, the two murder in aid of racketeering charges pending against him, each of which carried a mandatory life sentence. On April 24, 2018, the Court imposed a 35-year sentence. Dkt. 901 (judgment); Dkt. 907 (transcript of sentencing). At sentencing, the Court explained at length why, in light of the 18 U.S.C. § 3553(a) factors, such a sentence was justified and reasonable.

3. In his § 2255 petition, Wright makes a series of arguments. For the reasons more fully set out in the Government's response, which the Court here incorporates by reference, none are meritorious.

    a. Wright first argues that his sentencing on the two § 924(c) charges was unlawful in light of the First Step Act of 2018. Pub. L. No. 115-391, 132 Stat. 5194. That statute reduces, in some circumstances, the length of the sentence imposed for a second, or stacked, conviction under § 924(c). The First Step Act, however, was enacted on December 21,

2018, some eight months after Wright was sentenced. The First Step Act is not retroactive to offenses that were final at time of the act's enactment. *See, e.g.*, *United States v. Wiseman*, 932 F.3d 411, 417 (6th Cir. 2019); *United States v. Key*, No. 12 Cr. 712 (SHS), 2019 WL 2314693, at *5 n.5 (S.D.N.Y. May 31, 2019). In any event, even if the statute permitted a lesser sentence for these violations, the Court at sentencing stated that it would have imposed the same sentence as an application of the § 3553(a) factors. The First Step Act therefore would not have availed Wright.

      b.  Wright next suggests that his conviction on Count Two is void in light of *United States v. Davis*, 139 S. Ct. 2319 (2019), and/or *United States v. Barrett*, 937 F.3d 126 (2d Cir. 2019). That is wrong. These cases held void for vagueness the residual clause definition of "crime of violence" as used within various firearms statutes. *Davis*, for example, found the residual clause in 18 U.S.C. § 924(c)(3)(B) to be unconstitutionally vague. After *Davis*, for purposes of § 924(c), a "crime of violence" is limited to offenses that contain, as an element, the use of force. Wright argues that the racketeering conspiracy to which his § 924(c) conviction on Count Two applies is not such an offense. Wright's premise is correct that, under *Davis*, a racketeering conspiracy, defined by its elements, is not inherently a "crime of violence." The predicate offenses to which the participants in a racketeering conspiracy may engage may encompass, for example, fraud offenses, which do not have violence as an element. But Wright's conclusion that his conviction on Count Two must be vacated as invalid on account of *Davis* is wrong. That is because Wright's firearms possession as charged in Count Two was tied *both* to a racketeering conspiracy *and* a narcotics conspiracy, each among members of 18 Park. And § 924(c) applies to firearms possession in connection with either a "crime of violence" or a "drug trafficking crime," *see* 18 U.S.C. § 924(c)(1)(A). The latter means of violating § 924(c) is

3

unaffected by *Davis*, which limits only the scope of the first of these terms, "crime of violence." And at his guilty plea proceeding, Wright clearly allocuted to the use of a firearm in connection with his participation in the narcotics conspiracy. *See United States v. Vasquez*, 672 F. App'x 56 (2d Cir. 2016) (upholding § 924(c) conviction based on both a narcotics conspiracy and a Hobbs Act conspiracy, while assuming arguendo that the latter conspiracy did not constitute a crime of violence).

        c.      Wright next challenges the calculation of his criminal history. Wright's claim does not provide a basis for relief under § 2255 for multiple reasons, including because he was sentenced to two mandatory minimum statutes, and to the lowest sentence available to the Court. A different calculation of his criminal history could not have yielded a lower sentence.

        d.      Wright next claims that it was unconstitutional for him to receive a higher sentence than his co-defendants. That claim is frivolous. The Constitution does not speak to such issues. In any event, Wright's sentence relative to his co-conspirators was amply justified. Alone among his non-cooperator co-defendants, Wright participated in two murders. Wright also was one of two leaders of the gang. And his fellow 18 Park leader, Jonathan Rodriguez, received effectively the same sentence—a federal sentence of 30 years imposed in recognition of Rodriguez's having completed a 5-year term in prison for relevant conduct.

        e.      Wright next claims that he received ineffective assistance of counsel, because his counsel did not challenge the Title III wiretaps in the case. Wright does not explain in what way the wiretaps were legally infirm. No other defendant challenged the wiretaps. Nor does he explain why these wiretaps supplied consequential evidence against him. As the Government explains, the crimes to which Wright pled guilty did not primarily depend on

4

wiretap evidence (and no wiretap evidence was offered at either trial of his 18 Park co-defendants).

        f.        Finally, Wright suggests that it was improper for him to be sentenced based on the weight of drugs that were not found in his actual possession. That claim is frivolous. Wright's sentence—which was the product of a negotiated plea agreement under which Wright pled guilty to two firearms counts—had nothing to do with drug weight. And where drug weight is an issue, the law, in assigning responsibility to a defendant for a given quantity of drugs, does not require that the defendant have personally possessed such drugs. The law, including in connection with the offense of narcotics conspiracy with which Wright was charged, is to the contrary—a defendant can be liable, for example, for narcotics in which his co-conspirators trafficked. *See, e.g.*, *United States v. Johnson*, 633 F.3d 116, 118 (2d Cir. 2011) ("It is well settled that individual defendants are responsible for all reasonably foreseeable quantities of drugs distributed by a conspiracy of which they were members.")

       3.       Wright's submission does not make any other coherent claim for relief. Nevertheless, in the course of reviewing Wright's petition, the Court has considered the overall record of his case, including the record of his plea proceeding and sentencing. The Court has not found any infirmity in any proceedings in Wright's case or any deficiency, let alone a prejudicial one, in Wright's counsel's representation.

The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 1015 and to close this case.

The Court declines to issue a certificate of appealability and certifies that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: November 26, 2019
New York, New York